# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 18-cr-135 (RDM/GMH) |
| | ) | |
| **LATOYA MAHONEY-SMITH, a/k/a** | ) | |
| **Mayaalla-MuQaddim bint Abdullah bin** | ) | |
| **Abdulaziz al Saud, a/k/a Mayaalla Al** | ) | |
| **Saud,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DETENTION MEMORANDUM

This matter comes before the Court upon the application of the United States that Defendant, Latoya Mahoney-Smith, be detained pending trial pursuant to 18 U.S.C. § 3142. Defendant is charged by indictment with one count of false impersonation of a foreign, diplomat, consul, or officer in violation of 18 U.S.C. § 915, one count of remaining on diplomatic, consular, or official property without authority in violation of 18 U.S.C. § 970(b)(2), and one count of Contempt of Court, in violation of D.C. Code § 23-1329. The Court held a detention hearing on May 10, 2018, at which Defendant represented herself, with stand-by counsel. At the conclusion of that hearing and upon consideration of the proffers and arguments of Defendant and counsel for the government, as well as the entire record herein, the Court ordered Defendant held without bond. This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## FINDINGS OF FACT

At the detention hearing, the United States proceeded by proffer based on the indictment.

The defense challenged the government's proffer, arguing primarily that she is not, in fact, the person who has been indicted. Unless stated otherwise, the following fact are undisputed.

On February 23, 2018, Defendant went to the Embassy of Saudi Arabia in the northwest quadrant of the District of Columbia, and left two black suitcases in front of the building, causing certain law enforcement agencies, including the United States Secret Service (that "Secret Service") and the Metropolitan Police Department's Explosives Unit, to respond and, among other things, evacuate the area.

Defendant returned to the Embassy on February 26, 2018. She identified herself as a Saudi citizen named Mayaala Al Saud, and refused to leave until she met with the Saudi Arabian Ambassador to the United States, to whom she claimed she was related, to give him some classified documents in her possession. The Embassy's Chief of Security advised her that the Embassy's records did not confirm her story, and then called law enforcement. When a Secret Service officer arrived, he confirmed that Embassy staff had asked Defendant to leave, but she refused. Upon the officer's request, Defendant produced identification consisting of photocopies of documents seemingly from the Canadian government representing her name as Mayaalla-MuQaddim bint Abdullah bin Abdulaziz al Saud and her birth date as September 19, 1978. She also claimed to be Deputy Crown Princess of Saudi Arabia. When the officer told her that Embassy personnel wanted her to leave the premises, she complied and stepped outside the building.

Additional law enforcement officers who arrived later attempted to confirm the information she had given. The search of law enforcement records identified Defendant as Latoya Mahoney-Smith, with a birth date of September 16, 1974, and confirmed that the name she had given to the Secret Service was a known alias for Defendant. Law enforcement also confirmed an outstanding

warrant for Defendant's arrest issued in the State of Florida and charging Defendant with violating the terms of her probation stemming from her conviction on 24 counts of aggravated stalking. Secret Service officers then arrested Defendant, who became agitated and threatened to kill them.

On February 27, 2018, Defendant was charged in D.C. Superior Court with attempted threats to do bodily harm and unlawful entry, both in violation of provisions of the D.C. Code. She was then arraigned and released on conditions, including that she stay away from the Saudi Arabian Embassy.

After her release, Defendant continued to use her alias as Deputy Crown Princess to attempt to gain access to various diplomatic events in the District of Columbia involving Saudi Arabian officials, including by contacting the Assistant U.S. Attorney ("AUSA") assigned to her Superior Court case, the judge in her Superior Court case, Judge Weisberg, the State Department's Office of the Chief of Protocol, and the White House. She represented that she was part of an official delegation of Saudi Arabian officials who were to attend a meeting between the Crown Prince of Saudi Arabia and the President of the United States.

On March 23, 2018, Defendant appeared before Judge Weisberg for the initial status hearing in her Superior Court case. Judge Weisberg allowed her to remain released pending trial but ordered her to stay away from employees and officials of the Kingdom of Saudi Arabia and prohibited her from approaching within approximately 100 yards of the Embassy. On April 13, 2018, Defendant sent an email to Judge Weisberg's chambers seeking to return to the Embassy and indicating that she had diplomatic immunity as the Deputy Crown Princess of Saudi Arabia. At an April 20, 2018 status hearing, Defendant was again ordered to stay away from the Embassy and Saudi Arabian employees and officials. She later communicated with the AUSA in her

3

Superior Court case claiming again that she had diplomatic immunity as a member of the Saudi Arabian royal family and indicating her intention to return to the Embassy to obtain a temporary Saudi Arabian passport. She was warned off by the prosecutor, who reminded her of the stay-away order.

Nevertheless, on May 7, 2018, Defendant called the Secret Service's Control Center to inform them she was returning to the Embassy to pick up her personal property, and that she wanted an officer to escort her. She was warned that she would not be allowed to enter the Embassy. Later that day, but during business hours, a Secret Service officer was called to the Embassy and found Defendant standing in front of the property, approximately fifty-three feet from the Embassy's property line, and within 100 yards of the Embassy and the employees working within. Upon a request from law enforcement, Defendant produced identification consisting of a D.C. Department of Corrections Identification Card and a Library of Congress Card. The Identification Card had a fictitious social security number—one associated with twenty-nine individuals, none of whom are Defendant—a false date of birth, and the address of the Saudi Arabian Embassy as her home address. After she was arrested, Defendant again stated that she was a diplomat and citizen of Saudi Arabia. Officers confirmed via State Department records that she was not a diplomat.

### B. Defendant's Criminal History

Defendant has a long criminal history. Most recently, she was arrested, as outlined above, for attempted threats to do bodily harm and unlawful entry on February 26, 2018. She was on release pending trial in that case when she engaged in the conduct at issue here, which includes violation of the stay-away order entered in that case. She was convicted by a Florida court in

December 2007 for stalking, aggravated stalking, and contempt. The outstanding Florida warrant, which was issued in June 2017, stems from her failure to appear for a required appearance related to her probation in that case. Also in Florida, she was convicted in 2006 for stalking and trespass, twice in 2004 for fraud-swindle, and once in 2004 for stalking and fraud-impersonation. She further has arrests for other crimes, such as for forgery in St. Croix.

## LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention, and vice versa. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2). Where the justification for detention is risk of flight, the decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

## ANALYSIS

A.  **Application of the Section 3142(g) Factors**

Pursuant to 18 U.S.C. § 3142(g), the four factors that a court must consider in making a bond determination are: (1) the nature and circumstances of the offense; (2) the weight of the

5

evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Addressing those factors, the Court has determined that Defendant should be detained while awaiting trial because she is a flight risk.

### 1. *Nature and Circumstances of the Charged Offense*

The first factor, the nature and circumstances of the charged offense, favors detention. This factor asks the Court to consider "the nature and circumstances of the offense charged" as a general matter, but points especially to instances where "the offense is a crime of violence . . . or involves a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, the indictment and the government's proffer establish probable cause to believe Defendant impersonated a diplomat, failed to leave Embassy property when asked, and, perhaps most importantly for the purposes of this decision, violated a court order barring her from that property. That is, Defendant is charged with violating the primary condition set by the D.C. Superior Court when it released her pending trial on the charges of attempted threats of bodily harm and unlawful entry that are before that court. That conduct indicates that Defendant is unwilling to conform her behavior to obey court orders. Moreover, although the crimes of which she is accused do not involve violence, drugs, or weapons, she is currently facing up to ten years imprisonment on the impersonation count, a significant increase from the approximately six months she faces on her local charges, *see* D.C. Code §§ 22-407, 22-1803 (setting term of imprisonment of up to 180 fays for attempted threats to do bodily harm); D.C. Code § 3302(a)(1) (setting term of imprisonment of up to 180 days for unlawful entry). Indeed, the government's theory of the case is that Defendant is claiming diplomatic immunity as a maneuver to avoid prosecution. *See United States v.*

6

*Callaway*, 446 F.2d 753, 754 (3d Cir. 1971) (affirming conviction under 18 U.S.C. § 915 where defendant "intended to use diplomatic immunity as a shield against the law"). As that gambit does not seem to have succeeded, Defendant now has a significant motive to flee the jurisdiction if released. *See, e.g.*, *United States v. Bikundi*, 47 F. Supp. 3d 131, 134 (D.D.C. 2014) (noting that prospect of extended period of incarceration "gives the defendant 'a substantial incentive to flee'" (quoting *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013))).

    2.  *The Weight of the Evidence*

The weight of the evidence also favors detention. Defendant's primary defense—at least at the detention hearing—was that she is not Latoya Mahoney-Smith, the person named in the indictment. However, as explained in a proffer from a law enforcement officer at the detention hearing, when she was before the Superior Court on March 23, 2018, Defendant made the same claim. Law enforcement therefore fingerprinted her and confirmed that her fingerprints matched those of Latoya Mahoney in law enforcement databases, including the database maintained by the FBI's Criminal Justice Information Services Division ("CJIS"). Searches of CJIS also confirmed that Defendant is the individual subject to the outstanding warrant in Florida. That individual, moreover, is neither a Saudi Arabian citizen nor a diplomat.

In light of the fact that the government has sufficiently shown that Defendant is the person named in the indictment, the government's evidence is strong. Defendant has repeatedly insisted to law enforcement and to this Court that she is a Saudi Arabian citizen and diplomat. Agents from the Secret Service witnessed her refusal to leave the premises when asked by the Embassy's chief of security, an official authorized to make such a request. And she was later arrested outside the Saudi Arabian Embassy, although she had been warned repeatedly that a court order barred

7

her from the property and employees and officials of the Saudi Arabian government.

### 3. The History and Characteristics of Defendant

The history and characteristics of Defendant also favor detention. Section 3142(g)(3) directs the Court to consider: (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. 18 U.S.C. § 3142(g)(3)(A)–(B).

Defendant has been convicted of a series of offenses involving misrepresentation, fraud, and contempt of court. There is an open warrant for her arrest in Florida for failure to appear at a required court proceeding. She appears to have multiple aliases. She repeatedly attempted to deceive the Court during the detention hearing as to her identity. There is no concrete evidence that she has any significant contacts in the D.C. area. Although she stated at the detention hearing that she was staying with (unidentified) friends, on May 4, 2018, she told the AUSA assigned to her Superior Court case that she was homeless. Her criminal history—particularly as it relates to failure to obey court orders—record of deceitful behavior, and lack of connections to the area counsel strongly in favor of pre-trial detention.

### 4. The Danger to the Community

The fourth factor—the danger to the community posed by a defendant were she to be released—is the least relevant where, as here, the government has sought detention based only on

the threat that Defendant might flee and not on dangerousness. And the government has not even suggested how evidence of Defendant's dangerousness might be helpful in determining whether she is a serious risk of flight. Nevertheless, the other three factors establish by a preponderance of the evidence that Defendant is a flight risk, and the Court therefore finds that there is no condition or combination of conditions that would ensure her appearance at future court proceedings. *See, e.g.*, *United States v. Saani*, 557 F. Supp. 2d 97, 100 (D.D.C. 2008) (holding defendant whom government sought to detain based on risk of flight where "the only factor which mitigates against . . . detention" was "minimal" risk of defendant's dangerousness).

## CONCLUSION

Based on the consideration of all the evidence, the factors set forth in section 3142(g), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure Defendant's appearance at future court proceedings and at trial should she be released. Therefore, the government's motion for pretrial detention is **GRANTED**.

## DIRECTIONS REGARDING DETENTION

Defendant is **ORDERED** remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: May 16, 2018

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE